IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEONATRA SPENCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18 C 4258 |
| ) | |
| THOMAS DART and ) | |
| COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Deonatra Spence was in custody at the Cook County Jail from March 2018 to November 2018. During that time, he alleges, he was physically impaired due to an injury to his right leg. Spence has sued Cook County and its sheriff, Thomas Dart, in his official capacity, alleging that they violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RHA). Spence has moved for summary judgment on the issue of liability, and the defendants have filed a cross-motion for summary judgment.

### Background

The following facts are undisputed, except as indicated. On March 15, 2018, Spence was placed in custody at the Cook County Jail. He was released briefly and placed on electronic monitoring in the summer of 2018. On September 5, 2018, he was returned to the Jail and remained there until he was transferred to the Illinois Department of Corrections on November 1, 2018.

Spence had fractured his right leg in the fall of 2017, prior to his custody at the Jail. According to Spence, when he was taken into custody in March 2018, his broken leg was causing him severe pain, and he could not walk—he could only hobble. The defendants dispute this. They point to records of two medical examinations at the Jail in March 2018, which indicate that Spence was able to bear weight on his right leg, did not have any trouble walking without assistance, and was not limping.

Spence was initially housed in Division 4 of the Jail. He contends that the shower and toilet facilities in Division 4 do not comply with ADA accessibility standards and that he had difficulty using these while housed there. Spence filed a grievance regarding his housing in Division 4. The grievance did not mention the toilet or shower facilities in Division 4. Rather, Spence complained only about having to use stairs to access his cell.

After a doctor at the Jail examined Spence on March 30, 2018, he was moved to the Jail's Residential Treatment Unit, in which the housing is ADA-compliant. After the doctor's medical examination, a "medical alert" for use of crutches was added to Spence's file at the Jail, and he was given crutches. The medical alert for crutches terminated on April 27, 2018, when a new alert for use of a cane was added to Spence's file. This alert remained in effect until November 1, 2018, when he was transferred out of the Jail.

While at the Jail, Spence alleges that received physical therapy and attended doctor's appointments at Cermak, the Jail's health services division. Spence accessed Cermak via a ramp. He contends that moving up and down the ramp caused him pain, in part because it was so long and steep. In April 2018, Spence filed a grievance with

the Jail, complaining that it was difficult for him to use the Cermak ramp with his crutches and that using the ramp caused him pain. In response, Spence was notified that if he needed assistance with the ramp, he should contact a staff member.

The Jail is run by Sheriff Dart and Cook County. In June 2018, Spence sued Dart in his official capacity and the County, alleging that his housing in Division 4 and the Cermak ramp violated his rights under Title II of the ADA, 42 U.S.C. § 12132, and section 504 of the RHA, 29 U.S.C. § 794(a). Spence has moved for summary judgment on his claims, and the defendants have filed a cross-motion for summary judgment.

## Discussion

**A.  Summary judgment standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment on a claim or part of a claim, allowing a court to then "narrow the individual *factual* issues for trial by identifying the material disputes of fact that continue to exist." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); Fed. R. Civ. P. 56(a). At the summary judgment stage, a court must consider all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). Summary judgment is not appropriate if a reasonable jury could find for the nonmoving party. *Id.*

**B.  Overview of ADA and RHA**

Spence's claims under Title II of the ADA and section 504 of the RHA are based on the same alleged conduct by the defendants: housing him in Division 4, which lacked

accessible showers and toilets, and requiring him to use a long, steep ramp to access Cermak. Title II of the ADA was modeled after section 504 of the RHA, and thus "the elements of claims under the two provisions are nearly identical." *Lacy v. Cook County*, 897 F.3d 847, 852 n.1 (7th Cir. 2018) (quoting *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 845 n.6 (7th Cir. 1999)). To prevail on a claim under these statutes, a plaintiff must show (1) he was a "qualified individual with a disability"; (2) he was denied "the benefits of the services, programs, or activities of a public entity"; and (3) this denial was "by reason of" the plaintiff's disability. *Id.* at 853.

**C.     Cermak ramp claims**

Spence claims that the defendants violated the ADA and RHA because the ramp that he had to use to access Cermak did not comply with ADA structural accessibility standards. He alleges that, due to his leg injury, it was painful and difficult to use the ramp.

**1.     Qualified individual with a disability**

A person may be a "qualified individual with a disability" if he has a physical impairment that "substantially limits one or more major life activities" or he is regarded as having such an impairment. *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019); 42 U.S.C. § 12102(1). "Whether the plaintiff has an impairment is to be determined by the fact finder on a case-by-case basis." *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018); *Dadian v. Village of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001).

There is a genuine dispute over whether Spence was a qualified individual with a disability while at the Jail. Spence testified during his deposition that he had difficulty

4

walking and could not get around without crutches. The defendants point to records from two examinations of Spence in which Jail medical staff noted that Spence was not limping, did not have any difficulty walking, and could bear weight on his right leg. Because the evidence is conflicting on the issue of Spence's impairment, this is an issue that must be decided by a factfinder at trial. See *Geraci*, 891 F.3d at 277.

### 2. Denial of access to Cermak

Public entities, including correctional facilities, must take "take reasonable measures to remove architectural and other barriers to accessibility." See *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (citing 42 U.S.C. § 12131(2)). Failure to do so is discrimination that violates Title II of the ADA, and "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." *Lacy*, 897 F.3d at 853. Title II therefore requires that buildings constructed after 1992 and before 2010, like Cermak, comply with ADA structural accessibility standards ("ADA standards") promulgated by the U.S. Department of Justice. See *Lane*, 541 U.S. at 532; *Lacy*, 897 F.3d at 853; 28 C.F.R. § 35.151(c)(1). "Departures" from the standards are permitted "by the use of other methods . . . when it is clearly evident that equivalent access to the facility . . . is thereby provided." 28 C.F.R. § 35.151(c)(1). As indicated by the language of this regulation, a public entity that does not comply with the ADA standards has the burden of demonstrating that an alternative method provides equivalent access. See *Jeffreys v. City of Greensboro*, 430 F. Supp. 3d 54, 62 (M.D.N.C. 2019); *Cherry v. City Coll. of S.F.*, No. C 04-04981, 2006 WL 6602454, at *5 (N.D. Cal. Jan. 12, 2006).

### a. Noncompliance with the ADA standards

The defendants argue that Spence has failed to present evidence that would permit a reasonable jury to find that the Cermak ramp did not comply with the ADA standards. Spence points to the following evidence of noncompliance: a schematic drawing of the Cermak ramp, which includes a notation that the ramp is "47' long without a landing," Pl.'s L.R. 56.1 Stmt., Ex. 7, and deposition testimony from Eric Davis, the Deputy Director of the Cook County Department of Capital Planning and Policy. Davis is the Department's expert on ADA compliance, and he testified that, under the ADA standards, a ramp cannot have a run longer than thirty feet without an intermediate landing.

Preliminarily, the defendants contend that the ramp schematic is inadmissible under Federal Rule of Evidence 803(6) as a business record. Although the diagram itself is not hearsay, it contains notations that are offered for their truth, including the statement, "Existing ramp is 47' long without a landing." Pl.'s L.R. 56.1 Stmt., Ex. 7. For this reason, the document contains inadmissible hearsay unless an exception applies. Admission under Rule 803(6) requires authentication by a "custodian or other qualified witness." Fed. R. Evid. 803(6)(D). To satisfy this requirement at the summary judgment stage, Spence "only need establish that the document has 'sufficient indicia of trustworthiness to be considered reliable.'" *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir.2000)). This is typically done by attaching an affidavit from a person who would be qualified to introduce the record into evidence at trial. *Id.* Spence has not submitted such an affidavit but contends that the ramp schematic has been adequately

6

authenticated for the purposes of this motion because the defendants produced it to his counsel pursuant to a court order in another case. The defendants argue that the production of the document does not authenticate it sufficiently to permit its admission in evidence.

The authentication requirement concerns whether a document originated from its purported source. *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982). In *Brown*, the court held that business records offered by the government had been authenticated and were admissible where defendant's counsel had produced them for a grand jury proceeding and had represented that the source of the documents was the corporation of which his client was an officer. *Id.* The court reasoned that under these circumstances, the defendant had implicitly authenticated the business records. *Id.*

The circumstances under which Spence's attorney obtained the Cermak ramp schematic are analogous to those in *Brown*. The County's attorney had produced the schematic to Spence's counsel pursuant to an order by a judge of this court ordering "Defendants" in the case of *Lacy v. Dart* to "produce . . . the construction design/drawings for the ramp connecting Cermak Health Center with the Leighton Courthouse and/or Cook County Jail." *Lacy v. Dart*, 14 C 6259, Order of July 11, 2019 (dkt no. 517). In August 2019, the County's attorney complied with the judge's order— effectively acting on behalf of both the County and the Sheriff, the defendants in *Lacy*— by e-mailing the ramp schematic to Spence's counsel with a message stating "Attached is the only Cermak Ramp information . . . ." Pl.'s Stmt. of Add'l Material Facts, Ex. 3, at 1. By producing the diagram pursuant to a court order requiring production of "construction designs/drawings for the ramp," the County's attorney—acting as an agent

for the Sheriff and County—admitted that the schematic was exactly that: construction designs for the ramp. See Brown, 688 F.2d at 1116.

The defendants argue that their act of producing the schematic does not constitute authentication. In support of this argument, they cite *Castro v. DeVry University, Inc.*, 786 F.3d 559 (7th Cir. 2015), in which the Seventh Circuit held that "[t]he mere act of producing a document in response to a discovery request . . . does not amount to an admission of the document's authenticity." *Id.* at 578. But "the mere act of producing a document in response to a discovery request" is not what happened in this case. Instead, the County's attorney, acting as its agent in responding to a court order—not a discovery request—sent the schematic to Spence's counsel and represented that it was "the only Cermak Ramp information." Pl.'s Stmt. of Add'l Material Facts, Ex. 3, at 1. The court in *Castro* explained that there is an exception to the usual requirement of an affidavit authenticating business records where "the party challenging the document's admissibility . . . conceded the accuracy of the documents." *Id.* at 578 (quoting *Thanongsinh*, 462 F.3d at 778). That is exactly what happened here. Because the defendants, through their counsel, have already admitted that the schematic is what Spence contends it is, no further authentication is necessary at this stage. The schematic is admissible as a diagram of the Cermak ramp at the relevant time.

The fact that the schematic diagram is admissible, however, does not mean that it carries the day as a matter of law. The somewhat unorthodox foundation for the document, though sufficient to allow its admission, arguably affects its weight. And Spence points to no testimony directly establishing the actual ramp's noncompliance

8

with ADA standards. Davis, the County's interim subject matter expert on ADA compliance, testified that he "believe[d]" the standard in place at the relevant time precluded a ramp of more than thirty feet without an interim landing—and the schematic drawing shows a ramp a good deal longer than that without a landing. See Pl.'s L.R. 56.1 Stmt., Ex. 9, at 53:8–54:1. But Davis had never seen the drawing before his deposition and had no clue about its provenance. And as of the date of his deposition, he had never measured the actual ramp. Spence does not point to any testimony by Davis sufficient to establish the ramp's noncompliance as a matter of law. The matter must be decided by a factfinder.

### b. Equivalent access

The defendants argue that even if the Cermak ramp does not comply with the ADA standards, the question of whether they provided equivalent access is genuinely disputed, thus precluding entry of summary judgment in Spence's favor. As indicated in the previous section, Spence's claims must proceed to trial in any event. The Court nonetheless addresses the equivalent access issue to assist the parties in preparing for trial.

The defendants contend that the evidence shows that there was equivalent access to Cermak because wheelchairs were located throughout the Jail complex and were available upon the request of an inmate. The entirety of the evidence cited by the defendants on this point is a brief excerpt from the deposition of Sabrina Rivero-Canchola, the ADA compliance coordinator for the Sheriff's Office. Rivero-Canchola stated (the previous question and answer are provided for context):

> Q: Does somebody have to walk up or down an incline at the end of the tunnel to reach Cermak?

9

>   A: I don't know if there's an incline at the end of the tunnel. I don't know.
>
>   Q: Is there a wheelchair available at that area upon request from an inmate?
>
>   A: There's always a wheelchair available at any area at the request of an inmate. We could always bring one.
>
>   Q: Where is the wheelchair located?
>
>   A: There are wheelchairs located throughout the compound.
>
>   Q: I'm talking about at the lower level of Cermak where the incline is.
>
>   A: Your question assumes a lot of facts, so I am not aware that there's any incline at the lower level of Cermak or anything that you're stating in this fishing expedition, so I don't know.
>
>   Q: Is there a sign located at the incline leading to Cermak that a wheelchair is available upon request?
>
>   A: I don't know what incline you're talking about, so I don't know.

Defs.' Stmt. of Add'l Material Facts, Ex. G at 75:5-76:4.

Rivero-Canchola's somewhat petulant and non-responsive answers toward the end of this passage are not helpful to the defendants' cause. For this reason, all one can reasonably draw from her testimony is that there are wheelchairs available "throughout the compound," i.e. throughout the Jail complex—nothing about their proximity to the structure at issue in this case, nothing about how readily available they are, and nothing about how long it takes to get one for a detained person who says he needs one.

Spence, in reply, cites testimony from Lieutenant Johnice Brumfield-Greer, who works at Cermak. Brumfield-Greer testified as follows:

>   Q: Have you ever been told by anybody at the Sheriff's Office that wheelchairs are available upon request for inmates to use –

10

> A: No.
>
> Q: – to move up and down ramps?
>
> A: No.
>
> Q: Is there a wheelchair near the Cermak incline for an inmate with a cane to use upon request?
>
> A: No. The wheelchairs are in the urgent care area.
>
> Q: I'm just talking about the ramp.
>
> A: No.
>
> Q: So you're not aware of any wheelchair available on request for an inmate to move up and down the ramp?
>
> A: No.

Pl.'s Stmt. of Add'l Material Facts, Ex. 1 at 42:17-43:9.

The defendants object that Brumfield-Greer's testimony is from a different case and that Spence did not disclose her as a witness in the present case. The Court is inclined to agree; there does not seem to be any justification for her non-disclosure here.

But even if one disregards Brumfield-Greer's testimony, that does not help defendants. As indicated earlier, the issue of equivalent access is a point on which the defendants bear the burden of persuasion. Even if one assumes that wheelchair availability may amount to equivalent access, the defendants have offered nothing to that would support a finding that wheelchairs are reasonably available for a detained person who needs one to get up the ramp. The proposition that there are wheelchairs "throughout the compound"—i.e., at various places in the very large Jail complex— simply does not cut it.

Deviations from the ADA standards are permitted only if it is "clearly evident" that a public entity's alternative method provides "equivalent access to the facility." 28 C.F.R. § 35.151(c)(1). For all anyone can tell from Rivero-Canchola's testimony, a detained person needing a wheelchair to use the ramp could be forced to wait indefinitely, which could not under any stretch of the imagination be considered equivalent access. Equivalent access "entail[s] more than simple physical access"—it requires that the alternative method offers an individual with a disability "the same degree of independence that a structural accommodation would provide." *Flora v. Dart*, No. 15 C 1127, 2017 WL 2152392, at *5-6 (N.D. Ill. May 17, 2017), *vacated by agreement of the parties* (Oct. 19, 2017); *see also Clemons v. Dart*, 168 F. Supp. 3d 1060, 1066 (N.D. Ill. 2016) ( "[T]he availability of staff assistance upon request does not constitute equivalent access under the applicable regulations."). The defendants had ample opportunity to provide more evidence regarding the availability of wheelchairs for use on the ramp, but they have offered only Rivero-Canchola's back-of-the-hand response. No reasonable jury could find her testimony, which stands alone, sufficient to carry the defendants' burden of proof on the equivalent access defense.

For these reasons, the Court strikes the defense of equivalent access; it is not a genuinely disputed issue for trial.

### 3. "By reason of" disability

To establish discrimination "by reason of" his disability, a plaintiff must show that "but for his disability, he would have been able to access the services or benefits desired." *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (quoting *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir.

2006)). This element is genuinely disputed and will remain an issue for trial. Spence's medical records from the Jail contain notations reflecting that despite his right leg fracture, he was able to walk without difficulty, and he testified that he was able to get up and down Cermak ramp. Spence also testified, however, that it was difficult and painful for him to use the Cermak ramp with his crutches. He complained in his April 2018 grievance that it was challenging for him to use the Cermak ramp. This conflicting evidence raises a triable issue regarding whether Spence's alleged disability was the "but for" cause of his denial of access to services at Cermak.

### 4. Deliberate indifference

To establish liability under ADA at trial, Spence has to show that the defendants acted with deliberate indifference, which has two elements: "knowledge that a harm to a federally protected right is substantially likely" and failure to act upon that likelihood. *See Lacy*, 897 F.3d at 863.

This issue is likewise genuinely disputed and will have to be determined at trial. Spence points to the medical alerts reflecting that he needed crutches or a cane to walk and his grievance in which he complained that it was painful for him to use the Cermak ramp. The defendants point to medical records that contain notations to the effect that Spence was able to walk without difficulty and Spence's testimony that he was able to use the Cermak ramp. This conflicting evidence leaves a triable issue regarding whether the defendants failed to act despite knowledge that it was "substantially likely" that the long run of the ramp violated Spence's ADA rights by denial of access to Cermak.

**D.     Division 4 claim**

Spence also claims that the defendants violated the ADA and RHA by housing him for a time in Division 4, which lacks ADA-compliant shower and toilet facilities. The defendants argue that they are entitled to summary judgment on this claim because Spence failed to exhaust administrative remedies before filing suit.

Under the Prison Litigation Reform Act (PLRA), "[a] prisoner cannot bring a cause of action under federal law regarding prison conditions 'until such administrative remedies as are available are exhausted.'" *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016) (quoting 42 U.S.C. § 1997e(a)). This exhaustion requirement applies to RHA and ADA claims based on a correctional facility's denial of access to services or programs by reason of disability. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Spence's Division 4 claim is based on the lack of ADA-compliant shower and toilet facilities there, and it is therefore a challenge to conditions of confinement subject to the PLRA's exhaustion requirement. Spence argues that he exhausted this claim by filing (and subsequently appealing) a grievance complaining about his Division 4 housing. But this grievance does not satisfy the exhaustion requirement, because it makes no mention of the Division 4 shower or toilet facilities. Instead, Spence only complained about having to use stairs to access his Division 4 cell.

For these reasons, defendants are entitled to summary judgment on Spence's Division 4 claims.

## Conclusion

For the foregoing reasons, the Court grants the defendants' cross-motion for summary judgment on Spence's claims based on his Division 4 housing but otherwise

denies this motion [dkt. no. 56]. The Court denies Spence's motion for partial summary judgment on his claim regarding the Cermak ramp [dkt. no. 49] but finds against the defendants on their equivalent access defense. The case is set for a telephone status hearing on August 20, 2020 at 9:30 a.m. to discuss the possibility of settlement and set a trial date, using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 10, 2020